2019 ban bars Jerry Monroe and only Jerry Monroe from making any quote offensive or derogatory remarks about any HISD board member or employee unquote if and when HISD allows Mr. Monroe to return to its property. What are our options today? Is this an all-or-nothing proposition or do we question and let me respond as follows the July 15th ban that what we're seeking right here and today is to have the July 15th 2019 ban preliminarily enjoined because it is content discriminatory and viewpoint discriminatory so the court could rule that the content viewpoint discriminatory nature of the July 15th 2019 ban specifically its prescription against Mr. Monroe making any derogatory or offensive remarks about HISD board members or employees that that is a violation of the First Amendment and it could join that part of the ban. You could split it up in little parts and join parts of it and then say other parts are permissible? Well the school district has essentially conceded that Mr. Monroe can come back on to every part of its campuses except its board meetings and extracurricular activities so if they say if the school district administrators desire to have him come back that's essentially what happens with every person. You want this to enjoin derogatory or offensive? Absolutely we believe that that violates the Supreme Court's commands in RAV versus City of St. Paul. It violates Mattel versus Tam. The Supreme Court has held over and over you cannot disfavor certain topics when it comes to political speech. Does this case have anything to do at all with the April 11 ban at this point? We're not dealing with whether that was an appropriate ban for prevailing party purposes or any reason or some you know changing your policy none of that's before us right? The April 11th ban is only germane to this case with respect to the issue of mootness. It's not before the court here today in terms of the preliminary injunction. How many complaints did you file? Did you just file one complaint? We filed an original complaint and then we very shortly thereafter filed a first amended complaint. When was the first amended complaint filed? The first amended complaint was filed within a couple of days. In June? Yes sir. And then what about the motion for a preliminary injunction? It was filed instantaneously I think with the. Also in June? With the memorandum in support of the preliminary injunction also filed in June. I don't recall your honor if we filed a memorandum contemporaneously with them with the motion for preliminary injunction but we filed it very close in time. The one I have is from June 19th but I guess my relevant question is is there just the one memorandum in support? There is a there was a extensive briefing before Judge Werlein on the issues both pre-hearing and post-hearing so there are a number of memoranda that we submitted addressing these issues. So the hearing is on July 11th? The hearing I believe your honor occurred on July the 11th I think that's right. Right and so what I'm confused by is at no point have you actually challenged in the district court the July 15th ban that you opened the argument with that you would like us to enjoin right so you're here on a preliminary injunction appeal of a thing that was never challenged below. Actually your honor we did challenge the July 15th ban we challenged it at the hearing because it was first modified they they came in on July the 10th with a revised ban that was in essence the same ban that existed after as of July the 15th. I read the four letters I understand the distinction I guess I'm just asking a very simple question which is you couldn't have challenged the July 15th ban at the July 11th hearing and the thing that you led the argument with here this afternoon is you would like an injunction from the Fifth Circuit about a ban that the district court talks about in the preliminary injunction order obviously but was never challenged in a complaint was never challenged in a PI motion was never challenged in a PI memo and memorandum in support of a PI motion. That's that's weird right? With all due respect it's inaccurate on July the 15th I submitted a post-hearing memorandum that specifically targeted the content ban the content discriminatory nature of the July 15th ban. Did the court rule on that in any way? The court had before it my memoranda that were filed on July 15th and July 18th before it ruled on July the 19th. The July 19th order of the court includes what the July 15th language was right? It does your honor. So the court was ruling on the July 15th revised not not ruling on April because the court thought that was already resolved. That is correct your honor. Okay so okay did you I'm trying to figure out if the April one is moot though because you were starting to talk to me about that can we go back to that because I think of the opulent life case we have about where they change their position in the middle of the hearing and whether or not the old one is moot. So your honor our position is that under the voluntary cessation doctrine the school districts July 10th and July 15th 2019 bans do not moot the case. So essentially the April 11th ban still remains for the district court to adjudicate at a final resolution. I mean what do we need to rule on the mootness or do we only need to rule about the injunction because that's why we've expedited this. Is that correct? That is correct your honor. Can we just leave that alone? Yes your honor. The April one completely leave it alone if we agree with you that the July one is properly before us. If we think the July one is not properly before us then what do we do? Well Judge Worlein clearly ruled on the July 15th ban. It's in his opinion he upheld the July 15th ban as a modified ban that complies with the First Amendment in his view. So the July 15th ban is before the court and that's what we appealed from. We appealed from the denial of the preliminary injunction and you're correct we asked for an expedited hearing which your honor granted. So the the July 15th ban is what is squarely before the court now for the purposes of the preliminary injunction. And that's when you filed that before us about for us to take emergency action. Correct. And that those pleadings said it was the emergency action and we did not grant you relief on the merits but we did expedite is that and that's why we're here now today. That is correct your honor. Okay. So the the language of the July 15th 2019 ban barring Mr. Monroe from engaging in offensive or derogatory remarks is per se under RAV versus City of St. Paul and Mattel versus TAM a viewpoint discriminatory ban. That's the most egregious of content nature bans. Before I get there your honor there there is also this issue of prior restraint and as the court knows a prior restraint is has a heavy presumption of unconstitutionality which the school district must overcome. And to do that they have to prove that Mr. Monroe's conduct poses either a clear and present danger or a serious and imminent threat to a protected competing interest. Now since they've allowed Mr. Monroe effectively to come back on the campus if administrators will meet with him they can't show that he poses any clear and present danger at the present time or any serious or imminent threat. So it's only this ban for the meetings that's at issue that this is the only thing that's hurting from your perspective is that he can't go to the school board meeting? Well there are two. Until the end of the year? So the ban the July 15th ban will expire by its terms on December 31st 2019. However the prescription against Mr. Monroe engaging in offensive or derogatory remarks according to the July 15th ban itself continues into in perpetuity. So it remains to be adjudicated as to whether or not that content viewpoint discrimination is constitutional. Why so assuming arguendo and I know that you don't agree with this but assuming arguendo that the ban is overbroad because you could say you could say the principal's great but you can't say they're an idiot and I'm not saying that the principal's anything about the principal. I'm using it as a hypothetical. So assuming that is that is viewpoint discrimination or it's too broad because neither one of those are true threats in any case but there are some assuming arguendo that the district court found that there was a true threat by part of the statement. What happens? What result? That's why it this is much more difficult at a court of appeals than in the trial court to figure out because you would tailor this if you believed it was had some give and we don't have the liberty as far as I know to sit here and craft something for y'all that is constitutional if assuming arguendo that it's not constitutional as it sits there. I think your honor that the issue is now effectively been forfeited with all due respect by the district by allowing Mr. Monroe to come back onto all campuses in the district as long as administrators will see him they have removed any argument that he is a he presents a true threat he presents any threat whatsoever so that ship has sailed in our view your honor. What if it hasn't sailed? Assuming that they think he's threatening with his gun finger allegedly. Then what? If he is threatening with his gun finger but can he still not say that she's a bad principal? Your honor they can always impose reasonable time place and manner restrictions on Mr. Monroe's speech what's at issue here is the content viewpoint discriminatory nature of the podium they could gavel him down they could turn off the mic they can remove him from the podium as happened in the April 2018 board meeting they could remove him from the premises all together they have a number of less restrictive means here of dealing with any quote-unquote threat that he presents. So articulate the desired disposition that you're seeking. We want to preliminarily enjoin the July 15th 2019 ban we want in order from this court because we believe remand is not necessary in light of the concessions that have been made we want an order from this court that the July 15th 2019 ban in its entirety should be enjoined in its entirety and if not in its entirety at least as to the content viewpoint discriminatory nature of the offensive derogatory remarks that it prohibits him from making. So you know Are those the parts at the bottom? Is that the be local GKA legal use of profanity the bullet point list is that what you're referring to? That is the list that the district applies to everyone else what they apply to Mr. Monroe in the July 15th letter is a far different and more censorious content nature a content discriminatory ban they don't say to everyone else you can't come in here and make offensive or derogatory remarks they don't come in they don't say in their policy you cannot wear clothing that contains offensive or derogatory remarks. But I thought I'm sorry from your brief I thought that this was the part of the July 15th ban that you believe is content-based to that your answer to Judge Willett I understood was you want a preliminary injunction on the content-based ban from the July 15th order I thought this was the part that you think is content-based. It is. Which is challenged nowhere in the district court. No we did challenge it in the complaint it can't be right because I thought we'd establish that on the on the timeline at no point in the complaint does it describe any of these policies. But we attacked it at the hearing on July the 11th we also filed post-hearing memoranda that attacked the content nature of the ban it was squarely when the courts order does it deal with this part of the July 15th ban it it upholds the ban it doesn't address if I recall specifically I don't recall exactly whether yes Judge Werlein talked about whether it was a prior restraint and he qualified he believed that a prior restraint was subject to the forum analysis. He's talking about this July 15th ban and this provision of this July 15th ban isn't he? I'm sorry. Isn't he talking about this July 15th ban and this about derogatory and that sort of thing when he's talking about whether it's prior restraint? I don't think he specifically addressed that language. But is there any doubt the July 19 order is considering the revised July 15 language? No doubt at all. Judge Werlein at the hearing essentially instructed the district to revise the July 10th letter to remove certain parts that dealt with attorney client attorney communication settlement communications. They then came in with the July 15th letter as a revision pursuant to Judge Werlein's post-hearing memoranda Judge Werlein ruled on July the 19th that the July 15th ban was constitutional and that the preliminary injunction was denied. Thank you counsel you have time for rebuttal. Good afternoon. May it please the court. I was going to start off with the old adage that the record evidence speaks for itself. I think that is extremely true in this case for two reasons. Number one we do want the record evidence to speak for itself and we obviously took note of the fact that the court ordered the district court to forward the videos of both the April 9th and April 11th. Why didn't we have that to begin with? Your Honor this is something we can have an offline conversation about the procedures. I can tell you I contacted the clerk's office here to see whether for example we could submit those as record excerpts. Some other time I don't want to take your time. No no but it is an administrative issue and I want you to know that we did we did try. Okay. Do you agree that Judge Werlein considered the July 15th ban in his memorandum in order and in the order itself and the sequence was as Judge Oldham your question correctly indicated there was the initial criminal trespass warning that was issued. The criminal trespass warning was then modified by a letter dated July 10th of this year. Judge Werlein expressed some concern about some language at the beginning of that that talked about whether it was made it sound to Judge Werlein as if it were conditional. I represented a judge in that it was not conditional. Judge Werlein asked that be made explicit in the in the letter. That's why the July 15th letter was issued and but there are two points that come from that. Number one is that the language that they're pointing to derogatory and offensive language being used is not part of the criminal trespass warning. It is as Judge Oldham as you were getting to in that of of an explication that is given of the board policy that applies to everybody. It is not Jerry Monroe specific. So you do not believe that that is part of the injunction that's been issued? No. And and and to Judge Oldham's point that would be so I'm going to refer you all back to the Fairchild case because in the Fairchild case as you remember this court held that certain types of content based restrictions uh in the context of board meetings were perfectly appropriate. In that case you recall Judge it was a case where a teacher's aide had been fired. She wanted to talk about her case in a in a in a board of trustees meeting and an opinion authored by judging about them. I believe it was the court found that that was a perfectly appropriate content based restriction. In other words we shouldn't be naming uh and trying to shame individuals whether they're in a forum in which to do that. Well so in the hypo can you say the principal is a terrific principal. They do so much does so much for our students. Can you say that at the school board meeting? There is a there is a place in the in the meeting for what's called compliments or concerns. So somebody wanted to come forward. So could you say that? Give a compliment to someone they sure could. Could you say the principal does a terrible job and is not concerned at all about the students and plus they're stupid and they don't have the right degree. It's uh it is what you're pointing to is something that could under the law Fairchild be appropriately not allowed. I'm asking what is he allowed. He needs to have a clear rule so that he if it's a speech a prior restraining speech he needs to know clearly. He knows the rules. I'm asking well I don't know the rules and I've been studying it. It's clear from the record that he does because there's evidence record evidence that he said I knew I should not be naming individual teachers. What is the rule? Can you say the principal of this school is an idiot and lacks the proper degree? Judge you do not have to reach that issue in this case because. That's not part of the injunction or is it? The injunction your honor and this goes to your question that you asked early on is as to the package of conduct that occurred and that's so so my respectful point back to the argument about well if we just take this piece of what he did we take the fact that he wore a t-shirt with the teacher's picture on it that said principal so-and-so needs to go she don't like black people. We take that piece and we say well that's like somebody wearing a an armband or somebody saying F the draft on a t-shirt but that's not what we have in this case. What we have in this case and that's why I say the evidence speaks for itself we have got a situation your honor where a man is completely out of control in terms of his conduct both in an internal meeting at HISD a meeting in which his conduct was so outrageous so disruptive that somebody from outside a closed conference room had to call the HISD police to come in. You have a situation where a man is sitting across the table from two highly esteemed HISD administrators one of whose a PhD happen to be african-american saying I'm fixing to send you back out to the fields I'm gonna burn this GD place down slamming his fist on the table throwing things down and so your honor that's the record that Judge Werlein had to deal with. So what is the rule so you're gonna tell us that there is no rule about whether you can say the principle you don't want to answer the question. It's gonna be on a case-by-case basis I do and I do want to answer your question but to Judge Oldham's point that rule is not has not been subjected to challenge here what the ruling that you all have in front of you is a ruling that grants a that denies a the granting of a preliminary injunction based on the that the HISD was presented with both at the April 9th meeting and at the April 11th board meeting. Is he banned for the perpetuity from ever saying anything derogatory or offensive? He's not banned there's no ban that criminal trespass warning ban that will be in effect after December 31st. So the only ban is December 31st and then he could do whatever he wants after December 31st. But he has to comply with the rules to Judge Oldham's point that have never been challenged right rules have never been challenged so if he wants to bring as in Fairchild that's why I bring you back. That's fine, that's great. So you're saying that hasn't been challenged yet that's his phase two after December 31st. Exactly. If he wins, if he loses today. Even if he loses he's gonna have the right to come back to board meetings starting in January. We may be presented with a whole new set of issues depending on how he chooses to conduct himself and but we can't but I guess my respectful point is we can't prejudge any of that. I don't know what. You have to narrowly tailor your rules to try to be constitutional when you're in the public though it's probably a good idea to look at them every once in a while. Of course and they do and to your point Judge I mean these are rules that and you even saw them quoted by the acronym label in other cases that this court has dealt with. These are not kind of written on the back of an envelope. These are rules that have been established by school districts generally and have been applied and I don't, I strongly believe and HISD strongly believes that it puts up with a lot at its board meetings. I think you saw the record evidence where I asked Mr. Monroe about him bringing a noose to a meeting and bringing it into the boardroom and actually putting it around his neck while he was talking. Now is that something Judge that you and I would consider to be offensive? Absolutely. Did that result in a criminal trespass warning? No. And there's evidence that there's been a lot of other speech and conduct that did not give rise to your point to a criminal trespass warning but my respectful point is we've got to look at the entire package. Okay can we, I have a couple questions about the evidence. Sure. The first question I have is do we need to, you were here yesterday and you heard we had a videotape in a qualified immunity which is a very common, and Scott V. Harris said that, and this is just the general rule if you weren't here yesterday. My question is can we look at this video on our own or do we have to defer in any way to what Judge Werlein saw in the video? Well in terms of Judge Werlein's conclusions, factual conclusions, obviously they're subject to a clearly erroneous standard in terms of the factual conclusions that he drew but the fact that you have this evidence before you will allow you to look at it and determine whether or not his factual conclusions were clearly erroneous. Okay can you help me with that then because I've got two questions specifically about the video. Sure. One of them is that you were talking about in that conference room and there are a number of clips in that conference room, it's a vast majority of the record evidence is from that conference room. He's, respectfully, he's yelling and, but they're carrying on their regular meeting and just letting a gentleman who's standing next to him every once in a while, but it's not stopping them, no one seems to be cowering in the corner, and they're sitting right next to him while he's yelling, so how are they at all threatened by him if they're just doing, they're handing papers, they're sitting closer than I am to Judge Willett and to him yelling and it doesn't seem like anybody's afraid or, so can you help me with that? Sure. First of all, I give credit to the folks that work at HISD that they're able to sit there and put up with that. Of course, the person that was standing, in your view, if you're looking to his immediate left, that person standing there is a police officer, no, is an HISD police officer, and then the actual body cam video, you probably see somebody's hand that appears on the left-hand side of the screen, so there's a second officer in the back of the room and that's that officer's right hand. It's not his body cam, it's recording that. We did have Tonis Hilliard testified at the injunction hearing. She did talk about the abusive conduct that she perceived to go on. Frankly, it's clear from the record that that was what was going on, and so, and then the papers that you're talking about handing over, I'm sure the court saw the portion of the tape. He wadded one up and ripped it up. I saw that. He shredded it. It was, it was, it was, it was. You can respond if you don't think that happened. And what was being shredded, to your point, was an admonition that as part of this teacher reassignment process needs to be read and delivered to the person being affected by the administrative process. So for anyone to suggest that this is not disruptive conduct, this is a type of reassignment hearing that frankly should take a few minutes, and instead what you see on that video is what I consider to be a horrific, haranguing abuse in the most hateful, threatening way that somebody could. And I don't think, I know we're all experienced lawyers and judges, but I don't think for one second that we should ever lose our perspective on the fact that this is the type of conduct that under no set of circumstances could be considered to be protected First Amendment activity. And so one other point, because I know we're going to run out of time. You may have other questions for me, but there are a few additional points. I don't want to retread what we put in the brief, but there's a few additional points that I do want to point out that didn't get completely set out in the court's well-reasoned 25-page opinion or in our briefing. The first is with respect to this meeting. This could never be construed to be even a limited public forum in terms of what happened at that meeting. That administrative proceeding is a proceeding that affects individual teachers. Teachers are allowed to have a representative present, which is how Mr. Monroe's business model basically gets paid to represent people who are affected by these administrative proceedings. So he comes in and then, quite frankly, I think the record shows that he adopts this threatening, bullying behavior in a way that he believes could advantage the people that he is representing. So that's 1.1, which is that this administrative proceeding could never be considered to be any kind of public forum. It's a non-public forum. The second point I think I've made, which is that you can't parcel out or piece out pieces of what he did. So it's not just, as you were saying earlier, Judge Elrod, that he made a sign with his . . . Can I ask about that? Yes. What if we don't think he's making a gun thing? So actually . . . Does that even matter? It doesn't because it's the whole package. And so when you think about the whole package, not just the T-shirt identifying the teacher, the fact that the board meetings, as he knows, as he admitted, are televised. The fact that he's making these gang references. The fact that he's wearing a bandana when he comes up to the podium. The fact that as he gets about to say, you know, I know people that can offer these teachers protection. He raises that bandana to his mouth and says, finally, a mandate that either you take her out or I'll take her out. It's all that combination, in addition to the manner of delivery, which you see from the tape. It's all of that combination that HISD is reacting to. It's not an individual act like making a pointed finger with a gun, although I think, quite frankly, we may even have a still shot of that, of what you're pointing out in our brief. You do, but I'm just wondering if it's just some kind of thing he points when he's talking. Your question goes to my point, which is you can't parse this out. You've got to look at the entirety of what HISD was confronted with. On this front, I think there's a lot of criticism of what Judge Whirlwind did in his 25-page opinion. I think it is an extremely sound, thorough decision. One of the things that he does in there is he gives Mr. Monroe the benefit of a doubt, which frankly, on this record, I'm not sure he even had to give. And I'm not criticizing the court. I am trying to find out what it is that we're supposed to consider. I hope that that's clear from my questions. Absolutely it is. But the point is that he gave Mr. Monroe the benefit of a doubt, which is that Mr. Monroe, in the absence of this criminal trespass warning, would present the board with speech and conduct that would be protected by the First Amendment, which is not an unreasonable suggestion. But frankly, I think on this record, Judge Whirlwind could have just looked at what he did, that package of conduct, and held that in light of that conduct, he has engaged in unprotected speech, which justifies the criminal trespass warning. The criminal trespass warning here serves a couple of purposes. Number one, it serves the purpose of protecting HISD personnel from threats. It also protects the HISD processes from disruption. So that is one thing that it serves. It also, frankly, serves as a little bit of a cooling off period. I think you saw from the record that even when the April 11th criminal trespass warning was issued, did Mr. Monroe recognize the error of his ways? No. He wrote a letter, which is in the record, in which he said basically at the end, this is the way I do things. I'm not going to change the way I do things. He also said, I said nothing derogatory about the teacher. This in a situation where on a videotape, he's calling somebody an idiot, pointing to that person's picture on his chest with her name in large white letters. So from that standpoint, it serves as a cooling off period. And to the point of this list, it also is an educational period because it allows him to be able to see, as he started to recognize in the transcript of the hearing, I would encourage the court, I know the court's already looked at it, go back to that transcript and see, I tried my best to get him to articulate if he believed what he did was wrong. Mr. Nichols, can we rewind about 15 minutes? I want to go back to where you said these rules have never been challenged. And I want you to kind of tease that out with as much precision as you can. Sure. So the kind of challenge that I'm thinking about is the kind of challenge that happened in Fairchild. So in that case, it was not a criminal trespass warning that was the issue of some preliminary injunction or not. It was the teacher challenging the rules that said basically, thou shalt not name an individual as part of your presentation during the hearing of citizens. I'm short-circuiting it for purposes of time, but that's basically it. She made a challenge to that rule. Here, the only challenge, to Judge Oldham's point we have, is a challenge to the preliminary injunction with respect to the criminal trespass warning. And the criminal trespass warning, as I said earlier, and I apologize, Judge Will, if I wasn't clear enough on this, but it was the criminal trespass warning does not set out a parameter that says it tries to control any content of his speech. The criminal trespass warning, as you all know, basically says you cannot come onto HISD premises, and if you do, you may be subject to criminal trespass. There's nothing in the record to indicate that he has tried to come back on, and as we've talked about, that ban will be ending at the end of the hearing. At the next meeting, if we were going to try to be ruling so that it's not mooted out by our dilatoriness . . . Well, I mean, they've had meetings this fall. They have meetings every month. You don't know what day of the week, the month the meeting is that we're trying to shoot for to get an opinion? I'm not saying you're winning or losing, but it would seem that if we're trying to expedite something so it's helpful . . . I think right now we're only looking at one potential board meeting in December before the ban . . . You can answer that question, too, when it's your turn. And then I have another question. Is it appropriate to consider the effect on the hearer . . . Absolutely. Rather than . . . because our standard is not what this person thought. It's what a reasonably objective person would think. So, I'm wondering, how is that helpful? I think it's absolutely helpful. And all that record evidence, not only talks about the threat as it was initially made . . . But, the impact of a threat that is made on a televised school board meeting. Because I know you've read the record evidence that indicates that the principal was informed by others of this issue. So, it actually . . . the fact that it was on video, actually expands the nature of the threat. If someone is making gang references and saying he's going to take out a middle school principal . . . How could not other members of the HISD community not take that seriously as a threat? So, I think in terms of the standard, in terms of the . . . because as you know, under the First Amendment case law . . . It is that threatening speech is not protected. And, I know we cited some of the core cases . . . is certainly relevant. And, the fact that it was perceived as a threat, is certainly relevant. And, I think I'm out of time. I think I am. But, I appreciate the Court's questions. And, we would ask the Court to affirm the District Court's well-reasoned 25-page order denying the preliminary injunction. May it please the Court. Every Supreme Court case that deals with . . . first in this Court's cases that deal with governmental speech, political speech . . . carries offensive, disparaging, caustic . . . You go back to New York Times versus Sullivan in 1964 . . . RAV versus St. Paul . . . The Hustler case versus Falwell . . . Snyder versus Phelps . . . Justice Roberts dealt with extremely offensive speech in the context of a military funeral. The Court has held over and over and over again . . . that simply because the public or specific elements of the public deem certain speech to be offensive or derogatory or hateful. Mattel versus Tam . . . It was disparaging, a disparaging trademark. The Court cannot, cannot outlaw that kind of speech. Mr. Nichols talks about a true threat. Even Judge Warline found that the speech of Mr. Monroe's was not a true threat. The police who were at the April 9th grievance hearing did not arrest him. As you point out, Judge Elrod, there are two police officers there. There are seven police officers in the April 11th board meeting. They don't make an effort at all to arrest Mr. Monroe. So, there is no true threat here. What he said was in context, he wanted to see this teacher removed. He used impolitic words, just like the speaker in the Watts case used impolitic words about shooting LBJ if he ever got his hands on a rifle. The Supreme Court in Watts said that that was not prescribable speech. The same . . . about, you know, derogatory language. I think that Mr. Nichols' inability to define that and to tell this Court that it's a case-by-case basis, that raises the very problem we have here. That is a void-for-vagueness issue. It doesn't give anybody, anybody, including Mr. Monroe, any idea as to what he can say and not say that might be viewed by the HISD board as derogatory and offensive. Now . . . But does the injunction apply to this or not? Absolutely it does. And let me explain . . . How is it related to this list of guidelines? Because if you look at the July 15th letter, you see on page 2, beginning at the bottom of page 1 and on to page 2, you see what Mr. Monroe cannot say. All of the things that I talked about earlier, derogatory or offensive remarks about board members or employees, carrying visual aids that contain offensive or derogatory . . . Those apply to everyone in the HISD school district. That entire list, those are existing policies in Federal Rule of Civil Procedure 65, gives you a remedy if you're upset with it. You can go and challenge it in the district court. The HISD gets a hearing. And then there is a specification in subsection D about the contents of what the preliminary injunction would say. But you can't, after the hearing, call it a preliminary injunction and challenge it on appeal. You can move under Rule 8 of the Federal Rules of Appellate Procedure and get an injunction from us pending an appeal. But it just strikes me that all of this is out of order and none of it was presented in a way that someone could make an adjudication on what it is you're challenging. Even today, we're having a disagreement about are you challenging all of it? The July 10th letter, as I've said now twice, the July 10th letter contains the exact same content discriminatory, viewpoint discriminatory content. We challenged it at the July 11th hearing. Counsel, your complaint and your motion and your memo say nothing about them. So let me address the point, though, with respect to the July 15th letter as to whether or not it poses a chilling effect. If you go to the bottom of the second page, you will see that the school district says there, you were further advised that if you engage in the above conduct, meaning offensive or derogatory remarks on HISD property in the future, HISD may be required to issue additional criminal trespass warnings. That is chilling First Amendment right. That is the irreparable harm here. Counsel, I appreciate your desire to move on from this, and I recognize you don't want to answer this question, but maybe I can ask it this way. Can you give us a case from any court that allows a federal court to issue an injunction in the posture that you've presented this case, where it's not been challenged below and you're raising it in your brief on appeal? I think we fundamentally disagree, Judge Oldham, about whether we challenged it below. The July 10th letter, as I've said now three times— I'm sorry. Maybe it's my fault for being imprecise in the way I asked the question. Where it's not challenged in the complaint, the motion for preliminary injunction, or the memo in support of the preliminary injunction. Federal rules permit the trial by waiver or the trial by concession of everything that went on here. Mr. Nichols and I went back and forth with Judge Werlein about the July 10th letter. If you read the transcript of the July 11th hearing, you will see that Judge Werlein repeatedly addresses the July 10th ban. So it was before the district court. It was argued before the district court. Evidence was put on before the district court. That issue was tried. So I want to address, though, the issue here as far as Fairchild is concerned. Fairchild is a case in which there was no content or discriminatory ban in place. It was simply a parent who was attempting to challenge a grievance or an employee, I believe. But there was no issue there of her not being able to say offensive or derogatory things in the course of her remarks to the board. So we didn't have this First Amendment issue that is squarely presented by the July 10th and the July 15th ban. The limited public forum issue, I don't even think the court needs to address. Because in a limited public forum, even if you assume arguendo that the board meetings and the grievance meetings are limited public forum, content bans are presumptively unconstitutional even in a limited public forum. The school district has to show that it can satisfy a compelling interest and that it's the least restrictive means of satisfying that interest. As we've said before, there is no compelling interest here because they've allowed Mr. Monroe effectively to come back onto the campus. Counsel, where does it say that you can't say derogatory things? It says you can't do personal verbal attacks. The July 15th letter, I'm trying to find where it is. If you go to page 2, Your Honor, you will see. You can't wear clothing that has derogatory remarks, but where does it say you can't say derogatory things? There is also the use of any signs, banners, posters, or visual aids containing offensive or derogatory remarks about any HISD board member or employee. You can't put it on a poster and you can't name call or wear clothing, but it doesn't say you can't say something that's offensive. In the Cohen case, the Supreme Court has addressed the issue of clothing as being a form of speech. So whether he could say it verbally or whether he could say it in the form of something that he was wearing or in a sign or a visual aid, it's still protected expression. Okay, but did I miss something? There's nothing specifically where it says here he can't speak it, but it's clear from the language that he cannot wear clothing containing offensive or derogatory remarks. He cannot make use of signs, banners, or similar visual aids containing those remarks. That is effectively prohibiting his speech. Okay, once more with feeling just to get straight what is actually concretely before us. So when Mr. Nichols says these rules have never been challenged, the only challenge here is with respect to the criminal trespass warning, and that doesn't purport to control speech. It's only about coming onto HISD premises. You say? I say that the criminal trespass warning is in the July 15th letter. It clearly states that in a number of places. He says that's the only challenge here is with respect to the criminal trespass warning. It is to the July 15th letter, which incorporates a criminal trespass warning, and so, Your Honor, as you know, the Texas Penal Code has a Texas Penal Code 30.05 criminalizes criminal trespass, and under Texas Penal Code 12.22, that's a misdemeanor. Mr. Monroe can go to jail if he violates this prescription on offensive or derogatory remarks. That is inherently First Amendment violative in our view. And this is whatever is in the July 15th letter is what you believe is the scope of the injunction. That is correct, Your Honor, and so if there is a meeting, and the board can call meetings on a dime. They only have to give public notice under the Texas Open Meetings Act, so we do need a ruling. I was going to ask. Yes, we do. That was my last question. I don't know exactly the date. I believe it's the third Thursday or Tuesday, but we can provide that to the court in a supplemental letter. Obviously, you all have given us a lot to think about, but we don't want to mood out the case just because we're slow. And that's why we asked for an expedited hearing. And we've granted that. And you did, and we appreciate your doing that. So it is important for Mr. Monroe. He has testified that he doesn't miss board meetings. He desperately wants to speak at these board meetings. And I want to make a point here, Your Honor, that maybe— But you'll let us know when that is. You'll let us know when that is. I will, Your Honor. I will provide that. And if you disagree with it, you can send a 28-J that disagrees with it. So these board meetings are televised. They're live streamed. Mr. Monroe is not speaking only to the board members themselves. This is a forum that they've created, and it's a bit different than what happened in Fairchild. Fairchild, there wasn't, I don't believe, testimony about live streaming those meetings. But even so, he's speaking to a louder audience. And they say, well, you know, he could provide his statements remotely. He could give a representative. You got that. He's on TV, and people are watching him. That's what opposing counsel said. You need to wrap it up. I'm done, Your Honor. Thank you for your patience. Thank you for your time. Okay, thank you. We appreciate the prepared counsel on this interesting case. Thank you.